UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
ROBERT H. BURCH, individually and on       :
behalf of all others similarly situated,

                                    :

                       Plaintiff,       :               08 Civ. 1029 (WHP)

                                      :

                 -against-       :

SLM CORPORATION et. al.,       :

                    Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
RUSSELL PATRICK, individually and on       :
behalf of all others similarly situated,

                                     :

                       Plaintiff,       :               08 Civ. 2463 (WHP)

                                      :

                 -against-       :

SLM CORPORATION et. al.,       :

                    Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

          Plaintiffs in these related actions bring claims under §§ 10(b) and 20(a) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq., against SLM Corporation ("SLM") and

three of its executives on behalf of a purported class of investors who purchased shares of SLM

between January 18, 2007 and January 3, 2008.  Three different plaintiffs vie for appointment as

lead plaintiff: (1) the Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW"),

represented by Coughlin Stoia Geller Rudman & Robbins LLP, (2) two related investment

advisors, Westchester Capital Management ("Westchester Capital") and Green and Smith

Investment Management ("Green and Smith") (together the "Westchester Movants"),

represented by Abbey Spanier Rodd & Abrams, LLP, and (3) SLM Ventures, represented by

Girard Gibbs & De Bartolomeo, LLP.  They all agree that consolidation of the related actions is

appropriate, but differ over who can best represent the putative class.  For the following reasons,

the actions are consolidated, Westchester Capital is appointed lead plaintiff, and Abbey Spanier

Rodd & Abrams, LLP  ("Abbey Spanier") is approved as lead counsel.


## BACKGROUND

The complaint in <u>Burch v. SLM Corp</u>, No. 08 Civ. 1029, the first-filed action,

alleges that Defendants made false and misleading statements regarding SLM's business and

financial results, and concealed material information regarding its loans to subprime borrowers

attending non-traditional schools.  (Complaint dated Jan. 31, 2008 ("Compl.") ¶¶ 3, 12.)

Defendants were allegedly motivated by a desire to ensure a continued source of capital through

SLM's use of equity forward contracts and to complete J.C. Flowers's acquisition of SLM.

(Compl. ¶¶ 23-27.)  The class period runs from January 18, 2007 to January 3, 2008; however,

the complaint also alleges that additional disclosures were made when SLM announced its

fourth-quarter and full-year 2007 results on January 23, 2008.  (Compl. ¶¶ 60-61.)

Westchester Capital is the investment advisor to two funds that invested in SLM

— The Merger Fund and the Merger Fund VL.  Green and Smith is the investment advisor to

three funds that invested in SLM — GS Master Trust, MSS Merger Arbitrage 2, and

Institutional Benchmarks Series (Master Feeder) Limited.  (Declaration of Nancy Kaboolian

dated Mar. 31, 2008 ("Kaboolian Decl. I") Ex. B: Certification of Roy Behren, Chief

Compliance Officer, dated Mar. 28, 2008 ("Behren Certification") ¶ 1.)  The Westchester

Movants purchased 4,439,750 shares of SLM stock during the class period, and sold 2,866,773

shares, resulting in a net purchase of 1,572,977 shares. (Declaration of Nancy Kaboolian dated Apr. 17, 2008 ("Kaboolian Decl. II") Ex. A: Summary of the Westchester Movants' purchases and sales of SLM stock between Jan. 18, 2007 and Jan. 3, 2008.) All of the Westchester Movants' purchases occurred after SLM's April 16, 2007 announcement that J.C. Flowers would purchase SLM for $60 per share. (Kaboolian Decl. II Ex. A.) The Westchester Movants' net expenditure was $70,433,192 and its approximate loss ranges from $37,819,479 to $38,150,550, depending on the methodology used to calculate losses. (Kaboolian Decl. II Ex. A.) Westchester Capital suffered the vast majority of this loss — $35,268,762. (Declaration of Stephen T. Rodd dated July 16, 2008 Ex. 4: Summary of The Merger Fund and the Merger Fund VL's purchases and sales of SLM stock between Jan. 18, 2007 and Jan. 3, 2008.)

> The Westchester Movants submitted a certification from Roy Behren, Chief Compliance Officer for both Westchester Capital and Green and Smith stating that the Westchester Movants have full discretion and control over the investment of their funds and are authorized to commence legal action on behalf of the funds. (Behren Certification ¶¶ 1-2.) On June 30, 2008 the Court directed the Westchester Movants to submit further evidence that they have unrestricted decision-making authority over all five of the funds that purchased shares of SLM and authority to maintain this action on behalf of all those funds. In response the Westchester Movants submitted the following documents confirming that Westchester Capital and Green and Smith have the authority to pursue this suit and unrestricted decision making authority over all investments: (1) A May 28, 2008 Consent Action of the Board of Trustees of the Merger Fund and the Merger Fund VL (the "Funds") and a July 3, 2008 statement from a Vice President for the Funds; (2) A July 2, 2008 statement and June 10, 2008 Consent Action of the Trustee of the GS Master Trust; (3) A June 20, 2008 letter and a July 4, 2008 statement from

the Chief Operating Officer of MSS Capital Limited, which is the sub-investment manager of the FTSEhx Fund SPC, acting in respect of MSS Merger Arbitrage 2; and (4) An undated letter and a July 8, 2008 statement from the Chief Operating Officer of Credit Agricole Structured Asset Management Advisors LLC, investment manager to the Institutional Benchmarks Series (Master Feeder) Limited, acting in respect of the Cursa Series.  (Declaration of Arthur N. Abbey dated July 8, 2008 Exs. A-H.)

On January 15, 2008, Frederick W. Green ("Green"), the President of Westchester Capital, sent a letter to the shareholders of The Merger Fund explaining the losses The Merger Fund had suffered as a result of its investment in SLM.  (Declaration of Jonathan K. Levine dated Apr. 17, 2008 ("Levine Decl. II") Ex. B: Jan. 15, 2008 Letter to The Merger Fund Shareholders at 2-3.)  In that letter, Green stated that SLM's chairman, Al Lord, made a "major strategic blunder" by filing a lawsuit to collect a $900 million termination fee after J.C. Flowers invoked a material adverse change clause in the merger agreement, rather than negotiating a revised agreement.  (Levine Decl. II Ex. B at 3.)  Green went on to state that while SLM was litigating over the termination fee, SLM's operating performance was deteriorating largely due to "higher funding costs tied to the worsening credit crisis."  (Levine Decl. II Ex. B at 3.)

SLM Ventures is a joint venture that was formed for the purpose of investing in SLM.  (Declaration of Sam Sotoodeh dated Apr. 25, 2008 ("Sotoodeh Decl.") ¶ 2.)  It purchased 929,963 shares of SLM stock and sold 870,973 shares during the class period, resulting in a net purchase of 58,990 shares.  (Declaration of Jonathan K. Levine dated Mar. 31, 2008 ("Levine Decl I") Ex. B: Certification of Sam Sotoodeh dated Mar. 22, 2008.)  SLM Ventures's net expenditure was $5,062,332 and its approximate loss is $3,910,847.  (Levine Decl. I Ex. D: Calculation of SLM Venture's loss.)

4

SMW purchased 74,200 shares of SLM stock during the class period for $1,963,615. (Declaration of David A. Rosenfeld dated Mar. 31, 2008 ("Rosenfeld Decl.") Ex. B: Certification of SMW dated Mar. 28, 2008.) SMW suffered an approximate loss of $524,143. (Rosenfeld Decl. Ex. C: Calculation of SMW's loss.)

## DISCUSSION

### I. Consolidation

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B)(ii), and Fed. R. Civ. P. 42(a) provide for consolidation of actions with common questions of law or fact. See also Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990). The related actions both involve claims under the federal securities laws on behalf of purchasers of SLM securities who relied on allegedly materially false and misleading statements and omissions during the class period. Accordingly, the actions involve common questions of law and fact and are consolidated under the caption "In re SLM Corporation Securities Litigation, No. 08 Civ 1029 (WHP)."

### II. Lead Plaintiff

#### A. Presumptive Lead Plaintiff

The Court must appoint as lead plaintiff the class member or members most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). A plaintiff is presumed to be the most adequate if it: (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I). All three class members satisfy the first requirement—each filed a timely motion to be appointed lead plaintiff.

In determining which plaintiff has the greatest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. See, e.g., In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 98 (S.D.N.Y. 2005). The magnitude of the loss is the most significant factor. See Kaplan v. Gelfond, 240 F.R.D. 88, 93 (S.D.N.Y. 2007). The Westchester Movants have the greatest financial interest. In addition to suffering the largest loss, they also purchased the most shares and expended more money than any other proposed plaintiff.

A plaintiff must also "make a preliminary showing that it satisfies the typicality and adequacy requirements of F.R.C.P. 23." eSpeed, 232 F.R.D. at 102. The typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). In considering the adequacy of a proposed lead plaintiff, a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. Nov. 23, 2004). The Westchester Movants satisfy the typicality and adequacy requirements under Fed. R. Civ. P. 23. Like other class members, the Westchester Movants' injuries stem from the alleged overvaluation of SLM stock resulting from Defendants' materially false and misleading statements and omissions. In addition, there is no reason to believe that the Westchester Movants' claims conflict with those of the class. Finally, the

Westchester Movants have retained competent and experienced counsel. Therefore, the Westchester Movants are presumptively the most adequate plaintiffs.

    B.  Rebutting the Presumption

        This presumption that the Westchester Movants are the most adequate plaintiff can be overcome with proof that they cannot fairly and adequately represent the class or are "subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). SMW and SLM Ventures argue that: (1) the Westchester Movants do not have standing because they are an investment advisor; (2) they are an atypical investor because they engaged in a merger arbitrage strategy; (3) they are subject to unique defenses as a result of Green's statements on January 15, 2008; and (4) the complex structure of the Westchester Movants' funds will subject them to unique defenses.

      1.  Standing

        While, the Court of Appeals has not addressed whether an investment advisor has standing to serve as a lead plaintiff, a majority of district courts have found that an investment advisor has standing to serve as lead plaintiff if "it is authorized to act as attorney-in-fact with unrestricted decision making authority for the funds at issue." Kaplan, 240 F.R.D. at 95 (appointing the Westchester Movants as lead plaintiff); see also eSpeed, 232 F.R.D. at 98 (individual arguing he was an investment advisor to a group of plaintiffs could not be appointed lead plaintiff because he had not shown that the transactions were executed as if by a single person or that that he was an attorney-in-fact); Olsen v. New York Cmty. Bancorp, Inc., 233 F.R.D. 101, 108 (E.D.N.Y. 2005) (appointing investment advisor lead plaintiff where it was attorney-in-fact and had unrestricted decision making authority); Weinberg v. Atlas Air Holdings, Inc., 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (same); In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (an investment advisor could

not be appointed as class representative because it did not suffer any losses as an investor and was not an attorney-in-fact)[1]; Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 634 (D.N.J. 2002) (investment advisor could not be appointed lead plaintiff because it did not function as a single investor and had not submitted evidence that it could bring suit on behalf of its investors); Roth v. Knight Trading Group, Inc., 228 F.Supp.2d 524, 529-30 (D.N.J. 2002) (appointing investment advisor as lead plaintiff where it had demonstrated complete investment authority and that it was attorney-in-fact).  But see In re Tyco Intern., Ltd., 236 F.R.D. 62, 73 (D.N.H. 2006) (declining to appoint investment advisor as class representative because it could not allege it was directly injured by defendants' conduct and therefore could not establish Article III standing); In re Sonus Networks, Inc. Sec. Litig., 247 F.R.D. 244 (D. Mass. 2007) (concurring with the Tyco court's holding that an injury in fact is necessary for Article III standing, but appointing investment advisor as class representative because it had also invested its own funds and could therefore show an injury in fact).

This Court adopts the approach of other courts in this circuit.  The Westchester Movants have provided a declaration stating that they have unrestricted decision making authority and are an attorney-in-fact.  In response to this Court's Order dated June 30, 2008, they have also provided Consent Actions and statements from appropriate employees of the funds demonstrating their authority to maintain this action on behalf of the beneficial owners and to seek lead plaintiff status.  The Westchester Movants' submissions are sufficient to demonstrate standing.

---

[1] In Kaplan, the court explained that its holding in Turkcell was based on the fact that the investment advisor was not an attorney-in-fact.  Kaplan, 240 F.R.D. at 95.

### 2. Westchester Capital's Merger Arbitrage Strategy

SMW and SLM Ventures argue that the Westchester Movants are atypical investors because their funds engaged in a merger arbitrage strategy, gambling that the merger with J.C. Flowers would occur and that they would profit from the differential between its purchase price and the $60 per share merger price. There is nothing about this strategy that suggests the Westchester Movants were not injured as a result of the alleged overvaluation of SLM stock resulting from Defendants' materially false and misleading statements and omissions.

### 3. Statements by Green

SLM Ventures and SMW also argue that Green's statements in his letter to the shareholders of The Merger Fund will subject the Westchester Movants to unique defenses because the statements are inconsistent with their present claim that they were a victim of fraud. However, it is clear from the face of the letter that Green was criticizing SLM's response to J.C. Flowers's invocation of the material adverse change clause. Such criticism is not inconsistent with a claim that SLM made false and misleading statements about its business and financial results and concealed material information regarding its loans to subprime borrowers.

### 4. Structure of the Five Funds

The structure of two of the Green and Smith funds —MSS Merger Arbitrage 2 and Institutional Benchmarks Series (Master Feeder) Limited—appear to be complicated. MSS Capital Limited is sub-investment manager of The FTSEhx Fund SPC, which is somehow responsible for MSS Merger Arbitrage 2. Credit Agricole Structured Asset Management Advisors is investment manager to the Institutional Benchmarks Series (Master Feeder) Limited, of which one series, the Cursa series, invested in SLM. The relationship between these entities and Green and Smith may lead to unique defenses. See Smajlaj v. Brocade Commc'ns Sys., Inc.,

No. C 05-02042 (CRB), slip op. at *5 (N.D. Cal. Jan. 12, 2006) (declining to appoint the presumptive lead plaintiff where there were "too many questions surrounding [its] standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole"). Accordingly, because Westchester Capital suffered over 90% of the Westchester Movants' loss, the Court will appoint it as lead plaintiff.

III.    <u>Lead Counsel</u>

Westchester Capital has retained Abbey Spanier, competent and experienced counsel. Accordingly, the Court approves the selection of Abbey Spanier as lead counsel.

<u>CONCLUSION</u>

For the foregoing reasons, the actions are consolidated, Westchester Capital is appointed lead plaintiff, and Abbey Spanier is approved as lead counsel.

Dated: July 23, 2008
    New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*